**UNITED STATES of America,**

v.

**Samuel PATRICK, Defendant.**

**No. CRIM. 96–10047–REK.**

United States District Court,
D. Massachusetts.

March 10, 1999.

Paul E. Troy, Paul G. Lannon, Sherburne, Powers & Needham, Boston, MA, for Samuel Patrick, defendant.

George W. Vien, U.S. Atty's Office, Boston, MA, for U.S.

## Opinion

KEETON, District Judge.

### I.

At the sentencing hearing for defendant Samuel Patrick on January 29, 1999, a set of interpretive issues emerged that could not be resolved immediately. The court recessed the hearing, allowed time for filing of additional submissions, and gave notice that it would issue provisional rulings on these issues to invite further responses from the parties before again convening the recessed sentencing hearing. A provisional Opinion was issued on February 11, 1999, and the sentencing hearing was resumed on March 10, 1999. Final rulings on key matters are stated in this opinion.

### II. The Verdict

On August 5, 1998, the jury returned a verdict finding defendant Samuel Patrick NOT GUILTY on one charge and GUILTY on other charges made against him in the Fourth Superseding Indictment. The NOT GUILTY finding was on:

Count 42 (for purpose of maintaining position in enterprise engaged in racketeering activity, knowingly and intentionally committing and aiding in commission of murder).

The GUILTY findings were on:

| Count 1 | 18 U.S.C. § 1962(c) | Racketeering, |
| Count 2 | 18 U.S.C. § 1962(d) | Racketeering Conspiracy, |
| Count 3 | 21 U.S.C. § 846 | Conspiracy to Distribute Cocaine Base, |
| Count 21 | 21 U.S.C. § 841(a)(1) | Possession of Cocaine Base with Intent to Distribute and Distribution of Cocaine Base, |
| Count 26 | 21 U.S.C. § 841(a)(1) | Possession of Cocaine Base with Intent to Distribute and Distribution of Cocaine Base, |
| Count 29 | 21 U.S.C. § 841(a)(1) | Possession of Cocaine Base with Intent to Distribute and Distribution of Cocaine Base, |

Two counts against defendant Samuel Patrick had been severed and were not at issue in this jury trial. They were:

| Count 31 | (knowing possession of firearm after having been convicted of felony), |
| Count 32 | (knowing possession of ammunition after having been convicted of a felony), |

### III. Potential Effect of Disputed Issues of Interpretation

#### A. Offense Level Computation

The Probation Office included in the Presentence Report, as Revised 1/8/99, the following Offense Level Computation:

**Offense Level Computation**

(41) The Guideline Sentencing Range has been calculated using the guidelines in effect at the time of sentencing. The guidelines that affect the offense level and/or the criminal history calculations have not changed since the instant offense was committed.

(42) **Base Offense Level:** The offense level for 18 U.S.C. § 1962(c) (Count 1ssss) and 18 U.S.C. § 1962(d) (count 2ssss) is found at USSG § 2E1.1. Both counts refer to the same racketeering activity and are grouped per USSG § 3D1.2(a). According to USSG § 2E1.1, the base offense level is 19 plus any appropriate Chapter 3 adjustments or the offense level applicable to the underlying racketeering activity. Per USSG § 2E1.1(a)(1), the base offense level is 19.    19

(43) **Specific Offense Characteristics:** None    0

(44) **Adjustment for Role in the Offense:** The defendant was the leader of a criminal activity that involved five or more participants, as listed in the indictment. According to the offense conduct, Patrick exercised decision making au-

thority by controlling the supply of cocaine base to approximately 15 street level dealers, and regularly gave direction to other members of IVP regarding their drug trafficking activities. Therefore, per USSG § 3B1.1(a), a four level increase is warranted.  +4

(45) According to the offense conduct, testimony revealed that the members of the Intervale Street Posse gang, which includes the defendant, often utilized the assistance of juveniles to sell crack cocaine on the street. Per USSG § 3B1.4, a two level increase is warranted.  +2

(46) **Victim Related Adjustment:** None  0

(47) **Adjustment for Obstruction of Justice:** None  0

(48) **Adjusted Offense Level (subtotal):**  25
**Underlying Racketeering Activity:**
Count 3ssss, Racketeering Act One — Conspiracy to Distribute Cocaine Base
Counts 21ssss, 26ssss, 29ssss — Distribution Of Cocaine Base

(49) All counts are grouped together per USSG § 3D1.2(d).

(50) **Base Offense Level:** The base offense level for violations of 21 U.S.C. § 846 (Count 3ssss) and 21 U.S.C. § 841(a)(1) (Counts 21ssss, 26ssss, and 29ssss) offenses is found at USSG § 2D1.1. Per 2D1.1(a), the base offense level for drug offenses is determined with reference to the quantities of drugs for which the defendant may reasonably be held accountable.

(51) In this case, the defendant may reasonably be held accountable for 109.2 grams of cocaine base. For quantities of at least 50 grams but less than 150 grams of cocaine base, the base offense level is 32 per USSG § 2D1.1(c)(4).  32

(52) **Specific Offense Characteristics:** None  0

(53) **Adjustment for Role in the Offense:** The defendant was the leader of a criminal activity that involved five or more participants, as listed in the indictment. According to the offense conduct, Patrick exercised decision making authority by controlling the supply of cocaine base to approximately 15 street level dealers, and regularly gave direction to other members of IVP regarding their drug trafficking activities. Therefore, per USSG § 3B1.1(a), a four level increase is warranted.  +4

(54) According to the offense conduct, testimony revealed that the members of the Intervale Street Posse gang, which includes the defendant, often utilized the assistance of juveniles to sell crack cocaine on the street. Per USSG § 3B1.4, a two-level increase is warranted.  +2

(55) **Victim Related Adjustment:** None  0

(56) **Adjustment for Obstruction of Justice:** None  0
(57) **Adjusted Offense Level (subtotal):**  38

(58) **Adjustment for Acceptance of Responsibility:** None  0

(59) **Total Offense Level:**  38

(60) The Total Offense Level for the underlying offense, which is 38 as determined above, is the applicable Total Offense Level in this case as it is greater than the Total Offense Level determined pursuant to USSG § 2E1.1.

PSR Report at 14–15.

## B. Career Offender and Other Issues

The government contends that, under career offender provisions, USSG § 4B1.1(3), and appropriate criminal history calculations, minimum mandatory life sentences apply to the convictions on Counts 1, 2, 3, and 29 and that a life sentence is permitted, as the maximum, for the convictions on Counts 21 and 26. The text of the career offender provision is as follows:

### § 4B1.1. *Career Offender*

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) *the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply.* A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Maximum | Offense Level* |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| (C) 20 years or more, but less than 25 years | 32 |

U.S.S.G. § 4B1.1 (underscoring added). The Offense Statutory Maximum for each of the counts of conviction (Counts 1, 2, 3, 21, 26, and 29) is life. Thus, line (A) of the table in § 4B1.1 applies, and the "Offense Level" on that line is 37.

Does "offense level" as used repeatedly in § 4B1.1 mean Base Offense Level, or instead Total Offense Level? If it means Base Offense Level, then to the figure 37 must be added (if the court accepts the Presentence Report recommendations on this matter) 4 points for role in offense and

2 points for use of minors, resulting in a Total Offense Level of 43 and a mandatory life sentence.

If, instead, "offense level" as used in § 4B1.1 means Total Offense Level, the guideline range (for 37 and Category VI) would be 360 months to life.

If the career offender provision does not apply because two of Samuel Patrick's prior convictions should be treated as one, under related-case rules, the guideline range might be lower. How much lower—if at all, would depend primarily on the quantity of cocaine base for which defendant Patrick is held accountable. If he is accountable for more than 1.5 kilograms, then the Base Offense Level under § 2D.1(c)(1) will be 38. If 4 points are added for role in offense and 2 points for use of minors, the Total Offense Level will be 44. This exceeds the highest level (43) in the Sentencing Table, for which a sentence of life imprisonment is the minimum sentence within the guidelines absent grounds for departure.

Defendant Samuel Patrick contends that he is not a career offender and thus could avoid a life sentence by showing grounds for departure or by showing that he is accountable for less than 1.5 kilograms of cocaine base.

He bases his contention that he is not a career offender on the argument that two of the prior convictions in a court of the Commonwealth of Massachusetts should be treated as related because the sentences were imposed on the same date and as concurrent sentences, even though based on offenses occurring on different dates.

Also, the parties differ over what Criminal History Category is appropriate if the defendant is not treated as a career offender. If he is a career offender, the Category is VI. If he is not a career offender, the Category may be lower, and this point may become relevant if he is held accountable for a lower quantity of drugs than 1.5 kilograms.

The positions of the parties described immediately above are taken by the parties with the understanding (1) that a possibility exists that defendant will assert grounds for downward departure and the government will assert grounds for upward departure, and (2) that defendant is not waiving rights of appeal on alleged errors during pretrial proceedings and at trial.

## IV. Records of the Commonwealth

The two convictions at issue are identified in paragraphs (64) and (65) of the Presentence Report.

First, on 8/10/88, at age 17, defendant possessed with intent to distribute cocaine. This charge proceeded under Indictment No. 073201, date-of-filing December 14, 1988 under "(Dorchester Dist.Ct. # 7106)," Paper No. 1.

Second, on 12/5/88, at age 18, defendant trafficked in cocaine. This charge proceeded under Indictment No. 076206, date-of-filing February 21, 1989 under "(Dorch.Ct.# 8807CR11024A)," Paper No. 1.

The records for these two cases appear to have been maintained as separate records, but identical entries appear for some dates.

The entries for "Mar. 22, 1989" are different. In Dorchester Dist.Ct. # 7106, the entry is as follows:

Mar. 22, 1989 Comes into court—continued to April 18, 1989 for hearing by agreement. G Wilson, AC/M—J. Coffey, ADA—G. Grayson, Court Reporter—J. Conwell, attorney for defendant.

In Dorch.Ct. # 8807CR11024A, the entry is as follows:

Mar 22, 1989 Comes into Court—Waives reading of Indictment—Pleads not guilty. Bail: same. Court appoints attorney John Conwell to represent defendant pursuant to Superior Court Rule 53. Pre-trial conference report filed. Continued to April 18, 1989 for hearing by agreement. Defendant notified of

right to request drug examination. G. Wilson, AC/M—J. Coffey, ADA—G. Grayson, Court Reporter—J. Conwell, attorney for defendant.

The April 18, 1989 entries are identical, as follows:

April 18, 1989 Continued to May 2, 1989 for trial. Donohue, J.—R. Doonan, ADA—Electronic Recording Device—J. Conwell, attorney for defendant.

The May 2, 1989 entries are identical, as follows:

May 2, 1989 Defendant not in court—continued to May 23, 1989 for trial. G. Wilson, AC/M—J. McDonough, ADA—D. McLean, Court Reporter.

The May 23, 1989 entries are identical, as follows:

May 23, 1989 Comes into court—continued to June 6, 1989 by agreement for trial. G. Wilson, AC/M—R. Doonan, ADA—D. McLean, Court Reporter—J. Conwell, attorney for defendant.

The June 6, 1989 entries are identical, as follows:

June 6, 1989 Defendant comes into court—continued to July 11, 1989 for trial by agreement. G. Wilson, AC/M—J. McDonough, ADA—D. McLean, Court Reporter—J Conwell, attorney for defendant.

The July 12, 1989 entries are slightly different, and are reproduced here in full. In Dorchester Dist.Ct. # 7106, the entry is as follows:

"July 12, 1989 Defendant comes into court. Defendant offers to plead guilty. After hearing, Court accepts defendant's offer. Defendant pleads guilty. M.C.I., Cedar Junction, Max: Three (3) years, Min: Two and half (2½) years, *concurrent with sentence imposed on indictment # 076206.* Defendant notified of his right to file an appeal to Appellate Division. On oral motion of Commonwealth the court orders monies in amount of $174.00 seized at arrest forfeited to Commonwealth, defendant not

objecting thereto. Mittimus issued. Volterra, J.—R. Doonan, ADA—B. Buchanan, Court Reporter—J. Conwell, attorney for defendant." (Underscoring added.)

In Dorch.Ct. # 8807CR11024A, the entry is as follows:

"Defendant comes into court. Defendant offers to plead guilty. After hearing, Court accepts defendant's offer. Defendant pleads guilty. M.C.I., Cedar Junction, Max: Three (3) years and one day, Min: Three years. Court access defendant $25.00 for the Victim Assistance Program. Defendant notified of his right to file an appeal to the Appellate Division. On oral motion of Commonwealth the court orders monies in amount of $1,530 seized at arrest forfeited to Commonwealth, defendant not objecting thereto. Mittimus issued. Volterra, J.—R. Doonan, ADA—B. Buchanan, Court Reporter—J. Conwell, attorney for defendant."

## V. Statutory and Guidelines Provisions

### A. Statutory Provisions at Issue

Three sets of statutory provisions must be considered, interpreted, and applied in determining the appropriate sentence for defendant Patrick.

*First.* Defendant Patrick contends that the provisions of 21 U.S.C. § 851(c) authorize this court to adjudicate his contentions regarding the prior convictions in the Commonwealth. In quoting that statute here, I have underscored portions that will be discussed later in this opinion.

**Denial; written response; hearing**

(c)(1) *If the person denies an allegation of the information of prior conviction,* or claims that any conviction alleged is invalid, *he shall file a written response to the information.* A copy of the response shall be served upon the United States attorney. *The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punish-*

*ment* . The failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section. *The hearing shall be before the court without a jury and either Party may introduce evidence.* Except as otherwise provided in paragraph (2) of this subsection, *the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact.* At the request of either party, the court shall enter findings of fact and conclusions of law.

(2) *A person claiming that a conviction* alleged in the information *was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response. Any challenge* to a prior conviction, *not raised by response* to the information *before an increased sentence is imposed* in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.

21 U.S.C. § 851(c) (underscoring added; *see* explanation in Parts VI – IX of this opinion, below).

*Second.* Statutes of the second set at issue concern RICO and RICO conspiracies. I do not quote them here because no dispute in this case turns on text of disputed meaning.

*Third.* Statutes of the third set at issue concern drug crimes and penalties. 21 U.S.C. § 846 declares that any person who attempts or conspires to commit an offense defined in "Subchapter 1—Control and Enforcement," of "Chapter 13—Drug Abuse Prevention and Control," of "Title 21—Food and Drugs," of the United States Code

shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

The penalty provisions relevant to the sentencing of defendant Patrick appear in 21 U.S.C. § 841(b).

(1)(A) In the case of a violation of subsection (1) of this section involving—

.       .       .       .       .

(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of—

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) *50 grams or more of a mixture* or substance described in clause (ii) *which contains cocaine base;* . . .

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $4,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. *If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years* and not more than

life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $8,000,000 if the defendant is an individual or $20,000,000 if the defendant is other than an individual, or both. *If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment* without release and fined in accordance with the preceding sentence. Any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

21 U.S.C. § 841(b)(1)(A) (underscoring added).

## B. Sentencing Guidelines Provisions at Issue

The Sentencing Guidelines provisions that must be considered appear in § 4A1.2 and comments. In quoting them here, I have underscored portions that will be discussed later in this opinion.

§ 4A1.2 *Definitions and Instructions for Computing Criminal History*

(a) *Prior Sentence Defined*

(2) Prior sentences imposed in unrelated cases are to be counted separately. *Prior sentences imposed*

*in related cases are to be treated as one sentence* for purposes of § 4A1.1(a), (b), and (c). Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

3. *Related Cases. Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing. The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public. For example, if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were treated as related because the cases were consolidated for sentencing, the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes. In such circumstances, an upward departure may be warranted. Note that the above example refers to serious nonviolent offenses. Where prior related sentences result from convictions of crimes of violence, § 4A1.1(f) will apply.*

§ 4A1.2(a)(2) and Application Note 3 (underscoring added; *see* explanation in Parts VI – IX of this opinion, below).

## VI. Precedents

*United States v. Blackwood,* 913 F.2d 139 (4th Cir.1990) involved an appeal of a

conviction and sentence for possession with intent to distribute 188 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). The trial court held that § 6542 of The Anti–Drug Abuse Act of 1988 enacted a mandatory life sentence for a third-time drug offender. A corresponding provision had been codified in 21 U.S.C. § 841(b)(1)(A)(iii) before defendant Blackwood was sentenced in the trial court:

> (1)(A) In the case of a violation of subsection (a) of this section involving—
>> (iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base . . .
>
> Such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . .
>
> (ii) If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment. . . .
>
> (iii) If any person commits a violation of this subparagraph or of section 845, 845a, or 845b of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence.

The defendant Blackwood's criminal history record included two prior convictions, arising from a single episode. The district judge interpreted the federal statute as mandating a life sentence for Blackwood. The district judge also recognized, however, that this interpretation of the statute was subject to doubt, and he proceeded to determine an appropriate alternative sentence under the guidelines, declaring that this would be the sentence should a higher court hold that the two convictions arising from one episode should be treated as one conviction for purposes of applying the federal statute. The Fourth Circuit affirmed the conviction, held that the two prior convictions should be treated as one, vacated the life sentence, and remanded "for entry of the alternative Guidelines sentence imposed." 913 F.2d at 147. It expressed the view that the manifested Congressional intent was that the predicate offenses should have occurred on occasions "distinct in time." "The opinion added: *Cf. Petty II,* 828 F.2d at 3."

An issue of interpretation of Sentencing Guideline 4A1.2 of the Sentencing Guidelines arose in a quite different context from drug offenses in *United States v. Correa,* 114 F.3d 314 (1st Cir.1997). Defendant pled guilty to illegal reentry after deportation and on appeal challenged the part of his sentence that depended

> upon the district court's allegedly erroneous computation of his criminal history score. We must first resolve an issue that divides the circuits. Once that is behind us, we detect no miscalculation and therefore affirm the sentence.

114 F.3d at 315. Defendant Correa had resided legally in the United States for a short time ending on January 5, 1994, when he was deported. His criminal history for a period commencing with conviction of a crime committed in 1989 through the time of his deportation in January 1994 was extensive. The opinion of the First Circuit summarized the charges of particular significance, and state-court proceedings on those charges, as follows:

> 1. The February [1991] Offenses. On March 13, 1991, the Commonwealth of Massachusetts issued a criminal complaint (later served by summons) which charged Correa, then 19 years of age, with three counts of breaking and entering and one count of larceny. [Citation of statute omitted.] The charges arose from a spree that occurred on February 19, 1991; on that date Correa raided three separate automobiles parked in Danvers, Massachusetts, and absconded with ill-gotten gain from one.

2. **The June [1991] Offenses.** Some months later, Correa, still 19, was charged with falsifying his age to purchase alcoholic beverages, in violation of Mass.Gen.Laws ch. 138, § 34A (1991), and contributing to the delinquency of a child for buying and serving alcohol to two boys, ages 12 and 15 respectively, in violation of Mass.Gen.Laws ch. 119, § 63 (1993). The infractions were alleged to have occurred on June 8, 1991, in Beverly, Massachusetts.

3. **The State Court Disposition Hearing.** On October 28, 1992, Correa pled guilty in a state district court to all charges arising from both incidents. With respect to the February offenses, the court imposed a nine-month sentence on the three breaking-and-entering counts and filed the larceny conviction. With respect to the June offenses, the court filed all the convictions.

114 F.3d at 315 (omitting footnote 1, located at the end of this passage, explaining that in Massachusetts, after accepting a plea of guilty in a case [and thus effecting "the conviction," as that term is used in the quoted passage from the First Circuit opinion], the judge may, with the consent of the defendant, "place the case on file rather than impose sentence immediately." Often that is the end of the matter, but the court may at any time call up the case and impose sentence or order some other final disposition of the case).

On January 5, 1994, as noted above, the Government deported Correa. He reentered unlawfully in 1995 and found his way to Lynn, Massachusetts.

The authorities eventually apprehended him and pressed a charge of illegal reentry after deportation. See 8 U.S.C. § 1326 (1994). Correa pled guilty to this accusation in federal district court. . . .

114 F.3d at 316.

. . . In the course of his sentencing calculations, Judge O'Toole treated the February offenses as comprising one crime and the June offenses as comprising another, unrelated crime. Hence, he assigned criminal history points for each. On that basis. Correa garnered a criminal history score of 7, which placed him in criminal history category IV. Had the judge treated the February and June offenses as related rather than unrelated, or had he deemed the June offenses unworthy of consideration, Correa's criminal history score would have dropped by one point, placing him in criminal history category III. At Correa's adjusted offense level (19), the single criminal history point accounted for a substantial increase in his GSR (which rose from 37–46 months to 46–57 months). See U.S.S.G. ch. 5, Pt. A (sentencing table).

Having added the disputed criminal history point and fixed the GSR at 46–57 months, the judge then accepted the government's recommendation, incorporated in the plea agreement, that Correa be sentenced at the nadir of the applicable range. Consequently, the court imposed a 46–month incarcerative sentence. This appeal ensued.

114 F.3d at 316.

These circumstances of *Correa* make it clear that the only related-cases issue before the First Circuit for decision concerned the notion of related cases as used in calculating criminal history and NOT the notion of related cases as used in determining whether a defendant is a career offender. Nevertheless, of course, if the opinion of the First Circuit is reasonably interpreted as making pronouncements applicable also to the career-offender context, either directly or by analogy, this court must respect that guidance in resolving the career-offender issue raised by defendant Patrick, as well as the criminal-history issue. Because *Correa* plainly does speak to the criminal-history issue, I proceed first to examination of that issue and to considering whether the opinion in *Correa* supports defendant Patrick's contentions about his criminal history.

## VII. Calculation of Defendant Patrick's Criminal History

■ The *Correa* opinion of the First Circuit remarks:

In *United States v. Elwell*, 984 F.2d 1289 (1st Cir.1993), we intimated that a mere coincidence in timing, without more, is not enough to justify treating convictions that do not possess common antecedents as having been consolidated for purposes of sentencing. *See id.* at 1296 n. 7 (explaining that such convictions cannot be "deemed 'constructively' consolidated because of . . . [a] plea bargain and concurrent sentences") (dictum). We now transform the Elwell adumbration into an express holding: at least in respect to offenses that are temporally and factually distinct (that is, offenses which occurred on different dates and which did not arise out of the same course of conduct), charges based thereon should not be regarded as having been consolidated (and, therefore, "related") unless the original sentencing court entered an actual order of consolidation or there is some other persuasive indicium of formal consolidation apparent on the face of the record which is sufficient to indicate that the offenses have some relationship to one another beyond the sheer fortuity that sentence was imposed by the same judge at the same time.

In so holding, we align ourselves with a number of our sister circuits which have reached a substantially similar conclusion. [Citations omitted; they include citations to decisions of the Second, Fifth, Sixth, Eighth, and Tenth Circuits]. By the same token, we reject the minority view embodied in *United States v. Smith*, 991 F.2d 1468, 1473 (9th Cir.1993) (envisioning "no need for a formal consolidation order for cases to be 'related' under section 4A1.2").

We are cognizant that some may see insistence on a formal indicium of consolidation, such as an order or a docket entry, as arbitrary. But judicial inquiry into a defendant's criminal past for sentencing purposes, properly conceived, requires only a snapshot of the surface, not an archeological dig. Thus, when a federal court is obliged to tabulate a defendant's criminal history score for sentencing purposes, limiting the requisite inquiry to the formal record—the indictment, the docket entries, the judgment of conviction, and the like—strikes the right balance. Moreover, it does so in a manner that supplies needed uniformity while husbanding scarce judicial resources.

This approach also is in keeping with the way in which we have treated analogous matters. After all, when a federal court looks to a prior state conviction in formulating its sentencing calculus, the court most often characterizes the previous by means of a formal categorical approach, restricting its examination to the legislature's definition of the crime. *See, e.g., Taylor v. United States*, 495 U.S. 575, 600–02, 110 S.Ct. 2143, 2159–60, 109 L.Ed.2d 607 (1990); *United States v. DeLuca*, 17 F.3d 6, 8 (1st Cir. 1994); *United States v. De Jesus*, 984 F.2d 21, 23 (1st Cir.1993). If the legislature's definition provides an inexact construct, however, the court commonly bases its characterization of the previous conviction on what is readily apparent from the formal documents in the case, without delving more deeply into the actual circumstances of the offense. *See, e.g., Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160 (permitting a sentencing court, when a categorical approach fails, to consider the charging papers and the jury instructions to ascertain the contours of the particular prior offense); *United States v. Winter*, 22 F.3d 15, 19 (1st Cir.1994 (similar)); *United States v. Fiore*, 983 F.2d 1, 3–4 & n. 3 (1st Cir. 1992 (similar).

We are not disposed to deviate from this salutary principle in interpreting the "related case" guideline, U.S.S.G. § 4A1.2(a)(2). Were we to do so, we

would make criminal sentencing—already an operose task under the guidelines—a more cumbersome and time-consuming endeavor with little corresponding benefit. Criminal history, by definition, deals with bygone events which often happened in the distant past, or in a remote jurisdiction, or both. Requiring a federal judge to go behind the formal record and excavate the details of what transpired in each instance would impose an onerous burden, freighted with unusual evidentiary difficulties. We think that a categorical rule, analogous to that sponsored by the Supreme Court in *Taylor*, better serves the interests of justice.

114 F.3d at 317–18.

I consider one more aspect of *Correa* because the defendant before me, like Correa, was very young at the time of some of the offenses that bear upon the calculation of criminal history. In *Correa* the First Circuit opinion stated:

The appellant's fallback position is that, even if the June offenses are not "related" to the February offenses in the requisite sense, they nonetheless are juvenile status offenses and thus not countable in compiling his criminal history score. See U.S.S.G. § 4A1.2(c) (ordaining that the sentencing court should "never count ... [j]uvenile status offenses" when tabulating criminal history points). The district court rejected this asseveration. So do we.

The sentencing guidelines do not define the term "juvenile status offense," although they offer illustrations of crimes which, like juvenile status offense, are excusable in computing a defendant's criminal history score. *See* U.S.S.G. § 4A1.2(c)(2). In determining whether a prior conviction falls within the ambit of section § 4A1.2(c)(2), courts traditionally "look to the substance of the underlying state offense." *United States v. Unger*, 915 F.2d 759, 763 (1st Cir.1990). Moreover, courts can derive some guidance from a mirror image pro-

vision in the guidelines which encourages the assignment of criminal history points for a crime committed by a defendant before reaching the age of 18 if he or she perpetrated the crime within the five-year period immediately preceding the occurrence of the offense of conviction. *See* U.S.S.G. § 4A1.2(d)(2). This provision's primary purpose is to promote points for past crimes that predict criminal proclivity.

Considering together the case law and the actual guideline provisions, we conclude that a crime constitutes a juvenile status offense only if three elements coalesce:

(1) the defendant committed the crime as a juvenile, *see* U.S.S.G. § 4A1.2 comment (n.7);

(2) the conduct would have been lawful if engaged in by an adult, *see United States v. Ward*, 71 F.3d 262, 263–64 (7th Cir.1995); and

(3) the offense is not serious, *see United States v. Hardeman*, 933 F.2d 278, 281–83 (5th Cir.1991).

When all is said and done, this third element, which necessitates the appraisal of gravity for a given crime, is quintessentially a judgment call. Still, the illustrations of exempted offenses supplied by the Sentencing Commission, e.g., truancy, hitchhiking, loitering, vagrancy, and minor traffic infractions, U.S.S.G. § 4A1.2(c)(2), furnish a valid point of comparison. The enumerated offenses all possess a bland quality that helps to distinguish them from more substantial transgressions: for example, one common characteristic is that they provide little, if any, indication of a person's proclivity to commit future, more serious crimes.

114 F.3d at 318–19.

Guided by this passage in *Correa*, I conclude that defendant Patrick is not entitled to any benefit in calculation of his criminal history from the argument that his offenses were "juvenile status offenses."

The drug convictions involved in the criminal history in this case cannot possibly qualify as "bland" in the sense used by the First Circuit in *Correa*. Defendant Patrick cannot satisfy the third requisite of being treated as committing "juvenile status offenses." I need not consider whether he also fails under the first and second of the three independent requisites that are parts of the *Correa* analytic structure.

## VIII. Related–Case Issues

### A. Prior Sentences Treated as One Sentence

■ Under U.S.S.G. § 4A1.2(a)(2), "Prior sentences imposed in related cases are to be treated as one sentence" in calculating, under (a), (b), and (c) of § 4A1.1 the "total points ... [that] determine the criminal history category in the Sentencing Table in Chapter Five, Part A." In making the calculation, one must add

+ under (a), 3 points for each prior sentence of imprisonment exceeding one year and one month;

+ under (b), 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a); and

+ under (c), 1 point for each prior sentence not counted in (a) or (b).

In making this calculation for defendant Patrick, the court must consider each of the several issues designated here as **"Points" One** through **Three.**

**Point One.** "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense)." 4A1.2(a), comment 3.

The Commonwealth's official record of the first offense recites that on 8/10/88, at age 17, defendant possessed with intent to distribute cocaine, that this charge proceeded under an indictment filed December 14, 1988, that he did not appear when the matter was first before a judge of the Dorchester District Court, that the court ordered that a warrant be issued, and that he "Comes into court" on March 22, 1989 and the matter is continued to a later date "for hearing by agreement." The record is not explicit that he was arrested before coming into court.

The government argues that the absence of a record entry explicitly saying he was arrested does not entitle defendant Patrick to the benefit of either a presumption or an inference that he was not arrested, and that defendant Patrick cannot become entitled to either a presumption or inference by the late filing (after the end of the period set by the court for serving and filing objections to the Presentence Report) of his affidavit that he does not recall being arrested and instead believes that he was told that a warrant was outstanding and reported voluntarily to the police rather than being arrested.

I overrule the government's objection to the lateness of the filing of this objection. I do so despite the fact that it is my practice to enforce, against both the government and a defendant, deadlines for filing objections unless good cause for not doing so is shown. In this instance, the severity of the potential effect on the length of the sentence ultimately imposed, along with the complexity of the issues and the existence of reasonably debatable issues of law and fact associated with uncertainty about meaning and application of guidelines and recent precedents, are relevant factors to be considered. I find good cause for not precluding consideration of these matters on the merits.

This determination is supported also by the literal phrasing of passages in 21 U.S.C. § 851(c)(1) and (2). The closing sentence of (2) declares that a challenge is "waived," absent good cause, if "not raised ... before an increased sentence is imposed." The "increased sentence," if on the merits it is due, will not be imposed until the final determination is made during the further hearing to be held before the court imposes sentence on defendant

Patrick. This is true both with respect to any constitutionally based due-process (substantiative or procedural) argument and any non-constitutional argument invoking statutory or guideline provisions.

On the merits, it may reasonably be argued, as the government does here, that under the applicable guideline provisions and precedents the court must treat this case as one in which an arrest, or a set of circumstances so closely similar in relevant respects as to be treated the same as an arrest, for the first offense (of 8/10/88) occurred before commission of the second offense (of 12/5/88). A break occurred between events that keeps them from being related. As stated in the *Correa* opinion, even if all the charges arising from the first "spree" are treated as related, the second set of offenses were committed some "months later" and in a different location. They are to be treated as separate "incidents," "distinct" in time and in place. See Part VI above, quoting from *Correa*, 114 F.3d at 315, and from *Blackwood*, 913 F.2d at 147 ("distinct in time").

Recognizing the force of this argument, I nevertheless conclude that at least for the distinctive circumstances of this case it is outweighed by other considerations. First, police and prosecutorial officers commonly permit a defendant as to whom they do not perceive a risk of flight to be notified and allowed to report rather than being arrested. Second, an arrest is likely to be perceived as threatening not only by the defendant but as well by others at or near the place of arrest, and especially so if it is at the defendant's place of residence. The evidence before me in pretrial proceedings and during trial of this case showed that police and prosecutorial officials were especially sensitive, and for good reason, in this instance to planning for arrests to be made in circumstances that reduced risks of danger to persons and the community incident to the time, place, and circumstances of arrests of all the defendants charged in a sealed indictment. It is beyond genuine dispute that

an arrest is not only symbolically but also substantively very different from a voluntary appearance after notice of charges. The Commonwealth records produced for this sentencing hearing do not contain any explicit record of arrest. I conclude that in these circumstances comment 3 does not apply to this sentencing. **Point One** is resolved in favor of defendant Patrick.

Also, no good cause having been shown for viewing this matter differently depending on whether the purpose of consideration is in relation to criminal history calculation or career offender determination, *Point One* is resolved in favor of defendant Patrick in both contexts.

**Point Two.** "Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single scheme or plan, or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2(a), comment 3, second sentence.

For reasons explained above, I conclude that the offenses at issue here did not occur on the same occasion. The Commonwealth records before me show that the 8/10/88 offenses occurred on precisely that date. Even if one might reasonably infer that it was possible that the possession had commenced on an earlier date and continued without interruption, no basis appears in the record for a finding, even by a mere preponderance of the evidence, that the possession commenced earlier. The Commonwealth records now before me are less lacking in support for an inference that the possession that led to the "trafficking in cocaine" on 12/5/88 commenced on an earlier date, but they still lack foundational support for a finding by a preponderance of the evidence that the particular cocaine involved in the 12/5/88 trafficking extended anywhere near as far back as 8/10/88. Thus, part (A) does not apply.

For exactly the same reasons, part (B) does not apply. The official records provide nothing that could amount to ade-

quate support for a finding by a preponderance of the evidence that the offenses of the different dates "were part of a single common scheme or plan."

Remaining for consideration is part (C). It is true that the word "or" appearing before (C) means that Patrick can prevail by showing that (C) applies even though he has failed on (A) and (B). Also, I conclude that it is appropriate to read literally the "or" in the phrase "trial or sentencing" within part (C). What do the Commonwealth's official records say about whether the 8/10/88 and 12/5/88 offenses were consolidated for trial or sentencing?

My conclusion is that they were consolidated at least for "sentencing." By a previous agreement accepted by a single judge, they were set for hearing at the same time on a later date, before another single judge, and that judge accepted the pleas of guilty and sentenced forthwith. The shorter of the sentences, on the record, was on Dorchester Dist. Ct. # 7106 and was "concurrent with sentence imposed on indictment # 076206." See Part IV, above. I understand *Correa* as recognizing that docket entries in the Commonwealth's official records are a "persuasive indicium of formal consolidation apparent on the face of the record." See quotations from the *Correa* opinion, 114 F.3d at 317–18, in Part VI, above.

**Point Three.** "The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public." In this instance, trial judges and trial lawyers are guided by the examples that follow in U.S.S.G. § 4A1.2(a)(2), comment 3, fourth sentence. They concern "serious non-violent offenses committed on different occasions" and circumstances in which "a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes." It is appropriate, I conclude, when thinking about the effect of criminal history on sentencing, to be considering it in the context of the seriousness of the offenses of conviction as they affect the guideline range and how criminal history might affect that range. In this instance, the jury verdict includes findings of GUILTY with respect to very serious RICO and drug possession-with-intent-to-distribute offenses. Even without enhancement on criminal-history or career-offender grounds, absent departure, the lower end of the guideline range is a life sentence. Also, even had the jury found the defendant GUILTY on other charges for which he was tried, a mandatory life sentence would have applied. The NOT GUILTY findings of the jury were in my view reasonable findings on sharply conflicting evidence, even though I remain convinced that the evidence was sufficient to support GUILTY findings on all charges that were submitted to the jury, had they resolved all credibility issues in favor of the government's position. My conclusion is that this is not a case in which I should find that the guidelines provisions on treating prior offenses as related are "overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public."

### IX. Mandatory Minimums and Criminal History Score

■ Under U.S.S.G. § 4B1.1, if a defendant such as Patrick has two prior felony convictions of either a crime of violence or a controlled substance offense, he is a career offender. If Patrick's two prior felony convictions are treated as one under related-case provisions, he is not a career offender. If he is a career offender, then the offense level under the table in 4B1.1 trumps an otherwise applicable lower offense level.

Under 21 U.S.C. § 841(b)(1)(A)(iii), Patrick's mandatory minimum sentence is 20 years if any violation of § 841(a) of which he is convicted in this case involved "50 grams or more of a mixture or substance . . . which contains cocaine base" and he

had "a prior conviction for a felony drug offense [that] has become final."

This mandatory minimum of 20 years applies unless the lower end of the guideline range otherwise calculated is higher than 240 months. The lower end as otherwise calculated in this case is higher because the level is 37 and under Criminal History Categories IV, V, and VI the lower end of the range is above 240.

Under § 2D1.1(c)(1), if defendant Patrick is accountable for more than 1.5 kilograms of a mixture containing cocaine base, the Base Offense Level is 38, and with 4 points added for role in offense and 2 points for use of minors, the Total Offense Level is 44. The top level of the Sentencing Table (43) is exceeded and the minimum sentence within the guideline range is a life sentence, absent downward departure. This is so regardless of what the Criminal History Category is determined to be.

I have found no grounds for downward departure. Also, I have found it appropriate, as the Presentence Report recommended, to add 4 points for role in offense and 2 points for use of minors. A life sentence is mandatory under § 2D1.1(c)(1).