USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-2159 UNITED STATES OF AMERICA, Appellee, v. NELSON ROSALIO CORREA, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. George A. O'Toole, Jr., U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin and Cyr, Senior Circuit Judges. _____________________ _________________________ Elizabeth A. Lunt, with whom Zalkind, Rodriguez, Lunt & __________________ ____________________________ Duncan were on brief, for appellant. ______ Donald L. Cabell, Assistant United States Attorney, with _________________ whom Donald K. Stern, United States Attorney, was on brief, for _______________ appellee. _________________________ May 29, 1997 _________________________ SELYA, Circuit Judge. Defendant-appellant Nelson SELYA, Circuit Judge. ______________ Rosalio Correa challenges that part of his sentence which depends upon the district court's allegedly erroneous computation of his criminal history score. We first must resolve an issue that divides the circuits. Once that is behind us, we detect no miscalculation and therefore affirm the sentence. I I _ Background Background __________ We cull the largely undisputed facts from the plea colloquy, the presentence investigation report, and the transcript of the sentencing hearing. See United States v. ___ _____________ Garcia, 954 F.2d 12, 14 (1st Cir. 1992); United States v. Dietz, ______ _____________ _____ 950 F.2d 50, 51 (1st Cir. 1991). A native of the Dominican Republic, Correa resided legally in the United States for a short spell. That sojourn ceased on January 5, 1994, when, after having been convicted of various crimes committed between 1989 and 1993, he was deported. We do not chronicle the complete compendium of Correa's criminal capers, but confine ourselves to conveying the contours of certain crimes that possess particular pertinence for present purposes. 1. The February Offenses. On March 13, 1991, the 1. The February Offenses. ______________________ Commonwealth of Massachusetts issued a criminal complaint (later served by summons) which charged Correa, then 19 years of age, with three counts of breaking and entering and one count of larceny. See Mass. Gen. Laws ch. 266, 16A, 30 (1990). The ___ 2 charges arose from a spree that occurred on February 19, 1991; on that date, Correa raided three separate automobiles parked in Danvers, Massachusetts, and absconded with ill-gotten gain from one. 2. The June Offenses. Some months later, Correa, 2. The June Offenses. __________________ still 19, was charged with falsifying his age to purchase alcoholic beverages, in violation of Mass. Gen. Laws ch. 138,  34A (1991), and contributing to the delinquency of a child for buying and serving alcohol to two boys, ages 12 and 15, respectively, in violation of Mass. Gen. Laws ch. 119, 63 (1993). The infractions were alleged to have occurred on June 8, 1991, in Beverly, Massachusetts. 3. The State Court Disposition Hearing. On October 3. The State Court Disposition Hearing. _____________________________________ 28, 1992, Correa pled guilty in a state district court to all charges arising from both incidents. With respect to the February offenses, the court imposed a nine-month sentence on the three breaking-and-entering counts and filed the larceny conviction. With respect to the June offenses, the court filed all the convictions.1 In due course, the government deported Correa. Little  ____________________ 1In Massachusetts, after a plea of guilty in a criminal case, "a judge, with the consent of the defendant, may place the case on file rather than impose sentence immediately." DuPont v. ______ Superior Court, 401 Mass. 122, 123 (1987). Although that is _______________ usually the end of the matter, the case thereafter "may at any time be called up [by the court] and sentence may be imposed, or some other final disposition made of it." Marks v. Wentworth, _____ _________ 199 Mass. 44, 45 (1908). Hence, the defendant's right to appeal is suspended for the length of time that the case remains on file. See DuPont, 401 Mass. at 123; Commonwealth v. Delgado, 367 ___ ______ ____________ _______ Mass. 432, 438 (1975). 3 daunted, he reentered the United States unlawfully in 1995 and found his way to Lynn, Massachusetts. The authorities eventually apprehended him and pressed a charge of illegal reentry after deportation. See 8 U.S.C. 1326 (1994). Correa pled guilty to ___ this accusation in federal district court. The sentencing proceeding that followed comprises the cynosure of this appeal.2 We set the stage. In applying the sentencing guidelines, a nisi prius court, among other things, transposes the defendant's criminal past into "criminal history points," thus obtaining a "criminal history score" which yields a "criminal history category." See United States v. Emery, 991 ___ ______________ _____ F.2d 907, 909-10 (1st Cir. 1993) (illustrating the process). Since the guideline sentencing range (GSR) is derived from a grid and is determined in a given case by correlating the defendant's criminal history category with his adjusted offense level, see ___ United States v. Diaz-Villafane, 874 F.2d 43, 47-48 (1st Cir. _____________ ______________ 1989), criminal history points can profoundly affect the length of a sentence. This case typifies the phenomenon. In the course of his sentencing calculations, Judge O'Toole treated the February offenses as comprising one crime and the June offenses as comprising another, unrelated crime. Hence, he assigned criminal  ____________________ 2The district court apparently applied the November 1995 edition of the sentencing guidelines. See United States v. ___ _____________ Harotunian, 920 F.2d 1040, 1041-42 & n.2 (1st Cir. 1990) __________ (explaining that the guidelines in effect at the time of sentencing control unless ex post facto considerations prohibit their use). Thus, all references herein are to that edition. 4 history points for each. On that basis, Correa garnered a criminal history score of 7, which placed him in criminal history category IV. Had the judge treated the February and June offenses as related rather than unrelated, or had he deemed the June offenses unworthy of consideration, Correa's criminal history score would have dropped by one point, placing him in criminal history category III. At Correa's adjusted offense level (19), the single criminal history point accounted for a substantial increase in his GSR (which rose from 37-46 months to 46-57 months). See USSG ch. 5, Pt. A (sentencing table). ___ Having added the disputed criminal history point and fixed the GSR at 46-57 months, the judge then accepted the government's recommendation, incorporated in the plea agreement, that Correa be sentenced at the nadir of the applicable range. Consequently, the court imposed a 46-month incarcerative sentence. This appeal ensued. In it, the appellant contends that the district court erred in adding the extra criminal history point. He makes two arguments in support of this contention. We treat these arguments sequentially. II II __ Related Cases Related Cases _____________ The guidelines require the assessment of criminal history points for "each prior sentence." USSG 4A1.1. But there are exceptions. One such exception authorizes sentences imposed in what the Sentencing Commission calls "related cases" to be treated as a single sentence. See USSG 4A1.2(a)(2). ___ 5 Insofar as pertinent here, sentences are considered related "if they resulted from offenses that . . . were consolidated for trial or sentencing." Id., comment. (n.3). At sentencing, ___ Correa argued unsuccessfully that the February and June offenses fell within this safe harbor (and, therefore, should be deemed related) because the state court had in effect consolidated them for sentencing. Judge O'Toole rejected the notion that these disparate offenses constituted a set of related cases.3 Correa now presses this argument on appeal. The standard of review in sentencing appeals ordinarily is deferential. See 18 U.S.C. 3742(e) (1994); see also Dietz, ___ ___ ____ _____ 950 F.2d at 52. Thus, "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives" is not clearly erroneous and a reviewing tribunal cannot disturb it. United States v. Ruiz, 905 _____________ ____ F.2d 499, 508 (1st Cir. 1990). However, to the extent that an alleged error involves the district court's interpretation of a sentencing guideline, it presents a question of law warranting  ____________________ 3In so ruling, the lower court relied on an application note instructing that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense ____ prior to committing the second offense)." USSG 4A1.2, comment. (n.3). The court repudiated United States v. Joseph, 50 F.3d 401 _____________ ______ (7th Cir.), cert. denied, 116 S. Ct. 139 (1995), and impliedly _____ ______ found that the summons Correa received for the February offenses, which had been served before he committed the June offenses, constituted the functional equivalent of an intervening arrest. While this holding seems problematic, we need not resolve the uncertainty. Here, the record plainly presents an alternative ground for affirmance, and we are free to use that ground in lieu of the trial court's rationale. See Hachikian v. FDIC, 96 F.3d ___ _________ ____ 502, 504 (1st Cir. 1996). 6 plenary review. See United States v. Santiago, 83 F.3d 20, 26 ___ _____________ ________ (1st Cir. 1996); United States v. St. Cyr, 977 F.2d 698, 701 (1st _____________ _______ Cir. 1992). So it is here. In United States v. Elwell, 984 F.2d 1289 (1st Cir. ______________ ______ 1993), we intimated that a mere coincidence in timing, without more, is not enough to justify treating convictions that do not possess common antecedents as having been consolidated for purposes of sentencing. See id. at 1296 n.7 (explaining that ___ ___ such convictions cannot be "deemed `constructively' consolidated because of . . . [a] plea bargain and concurrent sentences") (dictum). We now transform the Elwell adumbration into an ______ express holding: at least in respect to offenses that are temporally and factually distinct (that is, offenses which occurred on different dates and which did not arise out of the same course of conduct), charges based thereon should not be regarded as having been consolidated (and, therefore, "related") unless the original sentencing court entered an actual order of consolidation or there is some other persuasive indicium of formal consolidation apparent on the face of the record which is sufficient to indicate that the offenses have some relationship to one another beyond the sheer fortuity that sentence was imposed by the same judge at the same time. In so holding, we align ourselves with a number of our sister circuits which have reached a substantially similar conclusion. See, e.g., United States v. Patasnik, 89 F.3d 63, 74 ___ ____ _____________ ________ (2d Cir. 1996); Green v. United States, 65 F.3d 546, 548-49 (6th _____ _____________ 7 Cir. 1995), cert. denied, 116 S. Ct. 826 (1996); United States v. _____ ______ _____________ Allen, 50 F.3d 294, 298-99 (4th Cir.), cert. denied, 115 S. Ct. _____ _____ ______ 2630 (1995); United States v. Alberty, 40 F.3d 1132, 1134-35 ______________ _______ (10th Cir. 1994), cert. denied, 115 S. Ct. 1416 (1995); United _____ ______ ______ States v. Klein, 13 F.3d 1182, 1185 (8th Cir. 1994); United ______ _____ ______ States v. Garcia, 962 F.2d 479, 483 (5th Cir. 1992). By the same ______ ______ token, we reject the minority view embodied in United States v. ______________ Smith, 991 F.2d 1468, 1473 (9th Cir. 1993) (envisioning "no need _____ for a formal consolidation order for cases to be `related' under section 4A1.2"). We are cognizant that some may see insistence on a formal indicium of consolidation, such as an order or a docket entry, as arbitrary. But judicial inquiry into a defendant's criminal past for sentencing purposes, properly conceived, requires only a snapshot of the surface, not an archeological dig. Thus, when a federal court is obliged to tabulate a defendant's criminal history score for sentencing purposes, limiting the requisite inquiry to the formal record the indictment, the docket entries, the judgment of conviction, and the like strikes the right balance. Moreover, it does so in a manner that supplies needed uniformity while husbanding scarce judicial resources. This approach also is in keeping with the way in which we have treated analogous matters. After all, when a federal court looks to a prior state conviction in formulating its sentencing calculus, the court most often characterizes the 8 previous conviction by means of a formal categorical approach, restricting its examination to the legislature's definition of the crime. See, e.g., Taylor v. United States, 495 U.S. 575, ___ ____ ______ _____________ 600-02 (1990); United States v. DeLuca, 17 F.3d 6, 8 (1st Cir. _____________ ______ 1994); United States v. De Jesus, 984 F.2d 21, 23 (1st Cir. _____________ _________ 1993). If the legislature's definition provides an inexact construct, however, the court commonly bases its characterization of the previous conviction on what is readily apparent from the formal documents in the case, without delving more deeply into the actual circumstances of the offense. See, e.g., Taylor, 495 ___ ____ ______ U.S. at 602 (permitting a sentencing court, when a categorical approach fails, to consider the charging papers and jury instructions to ascertain the contours of the particular prior offense); United States v. Winter, 22 F.3d 15, 19 (1st Cir. 1994) _____________ ______ (similar); United States v. Fiore, 983 F.2d 1, 3-4 & n.3 (1st ______________ _____ Cir. 1992) (similar). We are not disposed to deviate from this salutary principle in interpreting the "related case" guideline, USSG 4A1.2(a)(2). Were we to do so, we would make criminal sentencing already an operose task under the guidelines a more cumbersome and time-consuming endeavor with little corresponding benefit. Criminal history, by definition, deals with bygone events which often happened in the distant past, or in a remote jurisdiction, or both. Requiring a federal judge to go behind the formal record and excavate the details of what transpired in each instance would impose an onerous burden, 9 freighted with unusual evidentiary difficulties. We think that a categorical rule, analogous to that sponsored by the Supreme Court in Taylor, better serves the interests of justice. ______ In the instant case, the record is pellucid that the state court judge never entered an order consolidating the complaints, which embodied the February and June offenses, for sentencing or for any other purpose. To the exact contrary, the complaints embodying these two sets of offenses were at all times handled under separate docket numbers, and there is no indication that the state court judge ever gave a moment's thought to whether consolidation was (or was not) desirable. Moreover, the appellant concedes that the offenses occurred in different places at different times and that they arose in widely divergent factual contexts. Last, but not least, this is not a situation in which the court of original jurisdiction imposed a single sentence spanning a series of discrete offenses. Rather, the court imposed a prison sentence on the breaking-and-entering convictions (the main component of the February offenses) but did not include the convictions on the June offenses as part of the underpinning for that sentence. Instead, the court filed those charges, in effect reserving the right to call up the file and impose a sentence at a future date. See supra note 1. ___ _____ We will not paint the lily. Because there were no formal indicia of consolidation, the February offenses were not "related" to the June offenses under a proper reading of the federal sentencing guidelines. Hence, the appellant's principal 10 assignment of error fails. III III ___ Juvenile Status Offenses Juvenile Status Offenses ________________________ The appellant's fallback position is that, even if the June offenses are not "related" to the February offenses in the requisite sense, they nonetheless are juvenile status offenses and thus not countable in compiling his criminal history score. See USSG 4A1.2(c) (ordaining that the sentencing court should ___ "never count . . . [j]uvenile status offenses" when tabulating criminal history points). The district court rejected this asseveration. So do we. The sentencing guidelines do not define the term "juvenile status offense," although they offer illustrations of crimes which, like juvenile status offenses, are excludable in computing a defendant's criminal history score. See USSG ___ 4A1.2(c)(2). In determining whether a prior conviction falls within the ambit of section 4A1.2(c)(2), courts traditionally "look to the substance of the underlying state offense." United ______ States v. Unger, 915 F.2d 759, 763 (1st Cir. 1990). Moreover, ______ _____ courts can derive some guidance from a mirror image provision in the guidelines which encourages the assignment of criminal history points for a crime committed by a defendant before reaching the age of 18 if he or she perpetrated the crime within the five-year period immediately preceding the occurrence of the offense of conviction. See USSG 4A1.2(d)(2). This provision's ___ primary purpose is to promote points for past crimes that predict 11 criminal proclivity. Considering together the caselaw and the actual guideline provisions, we conclude that a crime constitutes a juvenile status offense only if three elements coalesce: (1) the defendant committed the crime as a juvenile, see USSG 4A1.2, ___ comment. (n.7); (2) the conduct would have been lawful if engaged in by an adult, see United States v. Ward, 71 F.3d 262, 263-64 ___ ______________ ____ (7th Cir. 1995); and (3) the offense is not serious, see United ___ ______ States v. Hardeman, 933 F.2d 278, 281-83 (5th Cir. 1991). When ______ ________ all is said and done, this third element, which necessitates the appraisal of gravity for a given crime, is quintessentially a judgment call. Still, the illustrations of exempted offenses supplied by the Sentencing Commission, e.g., truancy, hitchhiking, loitering, vagrancy, and minor traffic infractions, USSG 4A1.2(c)(2), furnish a valid point of comparison. The enumerated offenses all possess a bland quality that helps to distinguish them from more substantial transgressions: for example, one common characteristic is that they provide little, if any, indication of a person's proclivity to commit future, more serious crimes. In applying this paradigm to the June offenses, we note first that either of the two component crimes falsifying one's age to purchase alcohol and contributing to the delinquency of a child is, if not an exempted offense, independently sufficient to warrant the bestowal of the challenged criminal history point. Since contributing to the delinquency of a child is arguably the 12 more weighty of the crimes, we focus exclusively on it. The appellant flunks the first segment of the test: the victims may have been juveniles, but in ascertaining whether _______ a crime is (or is not) a juvenile status offense, it is the perpetrator's age, not the victim's age, that matters and Correa was 19 years old when he committed the act. Accordingly, he was not a juvenile. See USSG 4A1.2, comment. (n.7) (defining ___ a juvenile for this purpose as a person under the age of 18). He also fails to satisfy the second requirement: contributing to the delinquency of a child is conduct which state law criminalizes regardless of the perpetrator's age. See Mass. Gen. _____________ ___ Laws ch. 119, 63. Since the appellant's argument depends on his ability to establish three factors, and the first two are lacking, we need go no further.4 It is abundantly clear that the district court did not err either in declining to classify the crime of contributing to the delinquency of a child as a juvenile status offense or in assessing an extra criminal history point for it. Affirmed. Affirmed. ________  ____________________ 4Because the appellant's argument stalls at the first two stages of the test, we need not decide whether the offense might be written off either as youthful folly or as lacking predictive value vis- -vis future lawlessness (and, therefore, pass muster at the third stage of the test). 13