# United States Court of Appeals
## For the First Circuit

No. 06-1421

UNITED STATES,

Appellee,

v.

STEVEN WESLEY BELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
Lipez, Circuit Judge.

J. Hilary Billings, with whom Law Office of J. Hilary Billings was on brief, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

May 9, 2007

**STAHL**, <u>**Senior Circuit Judge**</u>.  Appellant Steven Wesley Bell pled guilty to and was sentenced for committing a credit union robbery, in violation of 18 U.S.C. § 2113(a).  He now contends that at the time of his sentencing, the district court committed clear error in calculating his criminal history points.  Specifically, Bell argues that his eight prior juvenile crimes were consolidated into two groups for sentencing, and as a result he should have received just three criminal history points for those prior offenses, rather than the thirteen points actually assessed by the district court.  Because we conclude that the district court did not commit clear error in calculating Bell's criminal history points, we affirm the sentence imposed by the lower court.

## I. Background

### A. The Federal Sentence

Bell pled guilty to robbing a credit union in Bangor, Maine, on April 4, 2005.  In committing the robbery, Bell entered the credit union office and handed a note to a teller that read: "THIS IS A HOLDUP!! I HAVE A GUN. PUT 100'S, 50'S AND 20'S IN A BAG AND YOU WILL NOT GET HURT."  Notwithstanding the note, Bell, only 19 years old at the time of the crime, did not have a weapon with him.  In response to Bell's demand, the teller gave him $2,210, after which Bell fled the credit union.

On February 21, 2006, the district court sentenced Bell to 77 months in prison, three years of supervised release,

-2-

restitution in the amount of $2,210, and a $100 special assessment. The sentence imposed was at the low end of the 77- to 96-month sentencing guideline range calculated by the district court. In determining Bell's sentencing range, the district court began by calculating a base offense level of 20, and added a two-level enhancement because the offense involved the property of a financial institution. Finding that Bell made a threat of death in the course of committing the robbery, the court imposed an additional two-level enhancement under USSG § 2B3.1(b)(2)(F) (2006), thus resulting in a total offense level of 24. The court then applied a two-level reduction for acceptance of responsibility, under USSG § 3E1.1(a), and a one-level reduction under USSG § 3E1.1(b), for timely entry of a guilty plea. These adjustments yielded a final offense level of 21. The court also assessed 13 criminal history points based on Bell's eight prior convictions, placing him in Criminal History Category VI. On appeal, Bell contests the imposition of the 13 criminal history points.

At his sentencing hearing for the credit union robbery, Bell argued that his eight previous convictions, all of which were adjudicated by Maine's juvenile justice system, were actually two clusters of crimes that were consolidated by the juvenile court into two groups for sentencing purposes. Therefore, Bell argued that he should receive only three criminal history points, under

-3-

USSG § 4A1.2(d)(2), instead of the thirteen points the court ultimately imposed upon him. Had the district court accepted Bell's argument that the prior convictions merited only three points, he would have been put in Criminal History Category II, which would have yielded a guideline range of 41 to 51 months. The district court, in rejecting Bell's argument on this point, concluded that there was no indication apparent on the face of the record that the juvenile court had consolidated his crimes for sentencing.

**B. The Juvenile Crimes**

Bell's juvenile crimes occurred in two temporal clusters. The first cluster (Cluster A) consisted of three crimes committed between October 12, 2000, and October 26, 2000. In Cluster A, Bell was convicted of terrorizing, for leaving a bomb threat in the bathroom of his high school; of petty theft, for stealing $55 from a tip tray on the counter of a local restaurant; and of criminal threatening with a dangerous weapon, for brandishing a knife and demanding money and cigarettes at a local convenience store. Bell was arrested for all three offenses at the same time, on October 31, 2000. Each charged offense was assigned a separate docket number. The three charges were resolved at a unified dispositional

hearing on April 6, 2001. Separate sentences were imposed for each crime,[1] and the sentences were made to run concurrently.[2]

The second cluster of juvenile crimes (Cluster B) consisted of five crimes committed by Bell between December 17, 2001 and March 28, 2002. In Cluster B, Bell was convicted of disorderly conduct, for kicking a wall at his high school; of petty theft, for stealing three posters from a comic book store; of nine counts of burglary, theft, and aggravated criminal mischief, for burglarizing five summer cottages; of forgery and theft, for attempting to negotiate a falsely made check in the name of his mother's roommate; and of possession of alcohol by a minor and escape. Each of the five crimes was assigned a separate docket number; these separate docket numbers were retained for the duration of the legal proceedings. All five charges were resolved at a unified dispositional hearing on May 16, 2002, before the same juvenile judge who had presided over the Cluster A sentencing.

There is some inconsistency among the court records regarding the sentences imposed for the Cluster B crimes. The

---

[1]The sentences imposed for the Cluster A offenses were as follows. On the terrorizing charge, Bell received a suspended sentence until age 18 and one month of probation. On the petty theft charge, Bell received 30 days of juvenile detention and one year of probation. On the threatening with a dangerous weapon charge, Bell received 30 days of juvenile detention.

[2]Maine's juvenile code requires that sentences of commitment to a juvenile correctional facility be served concurrently. See Me. Rev. Stat. Ann. tit. 15, § 3314(1)(H).

court issued a unified Judgment and Commitment order, carrying the docket numbers of all five crimes, imposing a sentence of commitment in a juvenile detention facility until Bell reached age 19.[3] This document might be read to suggest that, because of the imposition of one unified sentence, the crimes were consolidated for sentencing purposes. However, the court also maintained separate docket numbers and individual docket sheets for each of the charged crimes, and the docket sheets indicate that the court actually imposed separate, concurrent sentences as to each offense, as there were variations among the sentences imposed for each crime. For example, restitution of $5,200 was ordered for the disorderly conduct charge, restitution of $17 was ordered for the petty theft charge, and the commitment period imposed for the alcohol and escape charges was set to run only until Bell reached age 18.

On a separate issue, the district court found that there were no intervening arrests between the first four crimes in Cluster B, but that there was an intervening arrest between the

---

[3]One of the docket numbers listed on the Judgment and Commitment order is 02-27, which does not correspond to any of the docket numbers assigned to Bell's offenses. In their briefs, both parties seem to have concluded that the 02-27 docket number was a typographical error intended to be 02-57, which corresponds to Bell's alcohol and escape charges. This is a sensible conclusion, which we adopt.

fourth and fifth crimes.[4]  Because the sentencing guidelines state

that sentences are not "related" where they are separated by an

intervening arrest, see USSG § 4A1.2, cmt. n.3, the district

court's conclusion meant that the fifth crime in Cluster B could

not be "related" to the other crimes in that cluster.

Bell timely appealed the district court's rejection of

his claim of consolidation.

## II. Discussion

### A. Standard of Review

The Supreme Court has held that an appellate court must

"deferentially" review a lower court's assessment of whether a

defendant's prior crimes were consolidated for sentencing.  Buford

v. United States, 532 U.S. 59, 64 (2001).  This is so because "a

district judge sees many more 'consolidations' than does an

appellate judge. . . . [and] a district judge is likely to be more

familiar with trial and sentencing practices in general."  Id. at

---

[4]The fifth crime in Cluster B was charged as possession of alcohol by a minor and escape.  Police had been alerted by motel employees that minors in possession of alcohol had been spotted in the area.  When police arrived, they encountered Bell, and asked him if he had been drinking.  He responded in the negative.  The police contacted Bell's probation officer, who told them that Bell should be taken to the police station for a blood alcohol test, which was permitted as a condition of his probation.  The officers requested that Bell accompany them to the police station for such a test.  When he agreed, they placed him in the backseat of the police cruiser.  While the police were speaking with other minors also suspected of possessing alcohol, Bell's friend opened the police cruiser door, and Bell and the friend fled.  This was the basis for the escape charge.

64. Thus, "'where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives' is not clearly erroneous and a reviewing tribunal cannot disturb it." United States v. Correa, 114 F.3d 314, 317 (1st Cir. 1997) (quoting United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990)). "However, to the extent that an alleged error involves the district court's interpretation of a sentencing guideline, it presents a question of law warranting plenary review." Id.

## B. The Sentencing Guidelines

The Sentencing Guidelines assess criminal history points for "each prior sentence." See USSG § 4A1.1. However, sentences imposed in "related cases" are treated as one sentence for purposes of calculating a defendant's criminal history points. See id. § 4A1.2(a)(2). Note 3 of the commentary to USSG § 4A1.2 explains that sentences are deemed related if "they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." Bell's claim rests on the third definition of relatedness -- namely, that his juvenile crimes were consolidated for sentencing into two groups.

This circuit has established a categorical rule for determining whether charges were consolidated for sentencing: "charges . . . should not be regarded as having been consolidated

(and, therefore, 'related') unless the original sentencing court entered an actual order of consolidation or there is some other persuasive indicium of formal consolidation apparent on the face of the record which is sufficient to indicate that the offenses have some relationship to one another beyond the sheer fortuity that sentence was imposed by the same judge at the same time." Correa, 114 F.3d at 317. Correa identified several documents to which the courts might look for formal indicia of consolidation, including the indictment, docket entries, docket numbers, and the judgment of conviction. Id.

## C. Assessing Bell's Criminal History Points

Bell asks us to review the district court's determination that his eight juvenile offenses were not consolidated into two clusters for sentencing.[5] Maine law does not provide a formal

---

[5]Bell also seeks review of the district court's finding that the fourth and fifth crimes in Cluster B were separated by an intervening arrest, meaning that the fifth crime was not "related" under USSG § 4A1.2(a)(2). See supra note 4. The district court concluded that because Bell was charged with escape, he must have been under arrest when he was placed in the back of the police cruiser. As the court said, "[I]t seems inescapable that you don't get charged with escape unless you're under arrest." However, this conclusion does not appear to be supported by Maine law, which defines "escape" as leaving "official custody" without permission. See Me. Rev. Stat. Ann. tit. 17-A, § 755(1). Further, "official custody" is defined not only as arrest but also as custody on the way to a police station. Id. at § 755(3). We need not resolve this issue definitively, however, because the record contains sufficient grounds to conclude that the fifth crime in Cluster B, like the other crimes in that cluster, was not consolidated for sentencing. See Estate of Soler v. Rodriquez, 63 F.3d 45, 53 (1st Cir. 1995) ("An appellate court is not limited to the legal grounds relied upon by the district court, but may affirm on any

mechanism for consolidation of charges for sentencing.[6] Therefore, we must look at the face of the record to determine whether we detect any formal indicia of consolidation. See Correa, 114 F.3d at 317.

As to Cluster A, Bell argues that consolidation is evidenced by: (1) the Conditions of Probation order bearing the docket numbers for the terrorizing and petty theft charges; (2) the unified dispositional hearing for all three charges; (3) a single offer sheet from the District Attorney's office; (4) the involvement of the same prosecutor, district attorney, and judge in all three matters; and (5) "the comprehensive approach to sentencing that saw a structured sentence designed with a view toward its collective impact." In contrast, the government points out that there was no formal order of consolidation or docket entry suggesting consolidation, all three charges retained their distinct docket numbers, and different sentences were imposed for each crime.

---

independently sufficient grounds.").

[6]The district court suggested that Rule 8(a) of the Maine Rules of Criminal Procedure would permit a court to consolidate separate charges for sentencing. See Me. R. Crim. P. 8(a). However, that rule is directed toward joinder of charges for trial, not sentencing. Further, the prosecution's sole witness at the sentencing hearing, the assistant district attorney who had responsibility for all of Bell's charges, stated that he was not aware of a procedure for formal consolidation for sentencing, and that, in his experience, consolidation for sentencing was accomplished informally by the court, rather than formally.

Bell's arguments as to Cluster A are unpersuasive given the categorical approach adopted by this circuit. Indeed, the only potential indicium of formal consolidation on the face of the record is the Conditions of Probation order bearing the docket numbers of two of the crimes. However, the fact that the Conditions of Probation order governed two of the three offenses is not sufficient evidence of consolidation where each crime retained its original docket number and received a distinct sentence. This is particularly so where our standard of review is clear error. Therefore, we affirm the district court's conclusion that no consolidation occurred as to Cluster A.

Bell has a stronger argument that the Cluster B crimes were consolidated for sentencing. His most persuasive evidence of formal consolidation is the Judgment and Commitment order bearing the docket numbers of all five crimes, which mandated a unified sentence of confinement until age 19. However, as noted above, there is contradictory evidence in the record as well. For example, each crime retained its original docket number throughout the adjudication. In addition, the individual docket sheets indicate that the court imposed separate, concurrent sentences as to each crime, and that somewhat different sentences were imposed as to three of the crimes. Given this contradictory evidence, it would be difficult to conclude that the district court was clearly erroneous had it reached either result -- either that the charges

were or were not consolidated for sentencing.  Therefore, given our deferential standard of review, we decline to assign error to the judge's conclusion as to Cluster B.

### III. Conclusion

For the foregoing reasons, we <u>affirm</u> the district court's calculation of Bell's criminal history points, and therefore also <u>affirm</u> the sentence imposed on the appellant.