# United States Court of Appeals
## For the First Circuit

No. 06-1749

UNITED STATES OF AMERICA,

Appellee,

v.

JENNIFER GODIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Paul M. Glickman, by appointment of the court, with whom Glickman Turley LLP was on brief for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

June 13, 2007

**BOUDIN, <u>Chief Judge</u>.** In the early morning hours of March 7, 2005, Jennifer Godin entered the Super 8 Motel in Sanford, Maine, put a gun on the counter of the front desk, and told the clerk, "Give me everything in the drawer. Do what I say and you won't get hurt." The clerk then handed Godin paper currency and rolled coins, and Godin headed to the exit, saying, "If you tell anybody, then I'm going to come back." In the course of this threat, Godin apparently pointed the gun at the clerk.[1]

The clerk called the police and later identified Godin as the robber. Sanford police arrested Godin at her home on March 9, 2005. They seized various items linking Godin to the crime, including a revolver that matched the description of the gun used in the robbery and papers from rolled coins. The two handguns found in Godin's house were later identified as having been stolen. Witnesses also indicated that Godin had admitted to having robbed the motel on March 7.

Godin was charged with obstructing commerce by robbery, 18 U.S.C. § 1951(a) (2000), and with using and carrying a firearm-- including brandishing the weapon--during and in relation to the robbery, 18 U.S.C. § 924(c)(1)(A)(ii). Godin pled guilty and was thereafter sentenced under the Sentencing Guidelines (the 2005

_____

[1]The government described the brandishing in its version of the facts tendered during the later Rule 11 hearing. Godin's attorney conceded that the government could offer proof of the allegations made in its version of events.

edition was used) to 262 months in prison. She now appeals from her sentence. Our review is de novo as to purely legal issues and more deferential as to fact-finding and other issues. See United States v. Cao, 471 F.3d 1, 5 (1st Cir. 2006).

Godin's sentence comprised two elements: 178 months for the robbery, followed by a mandatory term of 84 months for the brandishing of a gun, required by statute to be served consecutively, 18 U.S.C. § 924(c)(1)(A)(ii), (D)(ii). The combined guideline sentence for the two offenses was greatly lengthened because the district court determined that Godin was a "career offender," defined as one whose current offense is "a crime of violence or a controlled substance offense" and who has two prior offenses falling in either category. U.S.S.G. § 4B1.1(a).

A career offender's sentence calculation is based on a higher offense level and a criminal history category at the highest level. U.S.S.G. § 4B1.1(b). Because Godin was so designated, her offense level for the robbery, adjusted (as it was) for acceptance of responsibility, would typically have been raised to 29 (rather than 17, as it would have been without this designation) and her criminal history category to VI (rather than IV). The resulting guideline sentence would have been 151 to 188 months for the robbery alone. U.S.S.G. ch. 5, pt. A.

However, because Godin was a career offender and was convicted of violating 18 U.S.C. § 924(c), guideline section

-3-

4B1.1(c)(3)--which provides especially severe sentences in such cases--applied; the result was a combined sentence range of 262 to 327 months.  Refusing to depart downward, the district court imposed the minimum--262 months--combined sentence, allocating 178 months to the robbery and the minimum 84 months to the firearm charge.[2]

On this appeal, Godin says the question whether she qualified as a career offender should have been determined by a jury.  The Supreme Court has so far declined to extend the sixth amendment prohibition on judicial fact-finding that increases the penalty for a crime beyond the statutory maximum to situations where the question is whether the defendant has previously been convicted of a crime.[3]  Godin says that under Shepard v. United States, 544 U.S. 13 (2005), a jury is now required at least to determine whether her prior burglaries were related or not.

The Supreme Court's basic concern has been with fact-findings that increase the penalty for a crime beyond the statutory maximum sentence.  Because in this case the sentence imposed is within the existing statutory maximum for each of the two crimes,

---

[2]The 84 months for violating 18 U.S.C. § 924(c)(1)(A)(ii) was the statutory minimum; for the robbery, 178 months was well within the statutory maximum of 240 months, 18 U.S.C. § 1951(a).

[3]See Apprendi v. New Jersey, 530 U.S. 466, 487-90 (2000); Almendarez-Torres v. United States, 523 U.S. 224, 247 (1998). This court is committed to following Almendarez-Torres until it is overruled.  United States v. Ivery, 427 F.3d 69, 75 (1st Cir. 2005), cert. denied, 126 S. Ct. 1448 (2006).

whatever Shepard may entail has no effect here. See United States
v. Ngo, 406 F.3d 839, 843 n.1 (7th Cir. 2005); see also United
States v. Martins, 413 F.3d 139, 152 (1st Cir.), cert. denied, 126
S. Ct. 644 (2005).

The question remains whether the district judge's
guideline calculations were correct. Godin had a number of brushes
with the law before the motel robbery, but only two prior
convictions qualified as crimes of violence or drug offenses. Each
was a burglary of a different apartment in the same apartment
building--one on July 26, 2002, and the other six days later on
August 1, 2002. In both cases, Godin knew the victim, had some
grievance, kicked in the apartment door and stole various items; in
one of the cases, she also trashed the apartment.

Burglary is classified under the pertinent guideline as
a crime of violence, U.S.S.G. § 4B1.2(a)(2), so the two 2002
burglaries--together with the instant armed robbery of the motel--
supplied the necessary predicates for career offender status,
unless the two prior burglaries are counted as only one conviction.
The career offender guidelines, by cross-reference, treat the two
convictions as only one (if not separated by an intervening arrest)
where the offenses

> (A) occurred on the same occasion, (B) were
> part of a single common scheme or plan, or (C)
> were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2, cmt. 3.[4]

Subsection (A) did not apply to Godin's two burglaries. This leaves subsections (B) and (C) for consideration. Subsection (A)'s rationale is apparent--crimes committed on the same date are arguably less reflective of "career" behavior than those separated by an opportunity to reflect, see United States v. Elwell, 984 F.2d 1289, 1295 (1st Cir.), cert. denied, 508 U.S. 945 (1993)--but the reasons for (B) and (C) have puzzled courts and led to some divergence in interpretation. Why, one might ask, should two separate crimes count for less because they were consolidated for trial or sentencing or, worse still, part of a common scheme or plan?

Probably the best explanation is that sometimes such crimes may seem like one course of criminal conduct and that consolidation and the scheme or plan category were regarded as crude proxies for this characteristic, the (frequent) misfit being acknowledged by an explicit warning in the commentary that their application could result in undue leniency, correctable by an upward departure. See U.S.S.G. § 4A1.2, cmt. 3. This "Rube

---

[4]The section defining terms used in the career offender guideline, U.S.S.G. § 4B1.2(c), makes it a condition of having "two prior felony convictions" for violent or drug offense crimes that each resulted in a sentence "counted separately" under U.S.S.G. § 4A1.1(a), (b) or (c); prior sentences "in related cases" count as one for purposes of these subsections, U.S.S.G. § 4A1.2(a)(2); and the limitation quoted in text is part of a comment defining "related cases." U.S.S.G. § 4A1.2, cmt. 3.

Goldberg" gimmickry, Elwell, 984 F.2d at 1295, has not encouraged an especially generous reading of subsections (B) and (C).

Our own cases insisting on an order of consolidation or some other indicia of formal consolidation for (C) are representative, see United States v. Bell, No. 06-1421, 2007 U.S. App. LEXIS 10922, at *9-10 (1st Cir. May 9, 2007); Martins, 413 F.3d at 152; United States v. Correa, 114 F.3d 314, 317 (1st Cir.), cert. denied, 522 U.S. 927 (1997), and Godin conceded in the district court that her prior burglary convictions were not formally consolidated. Thus it does not matter that she pled and was sentenced for both crimes at the same time, nor whether Maine has a mechanism for formal consolidation.

In the absence of an order of consolidation, relatedness under subsection (C) might nonetheless be established by sufficient indicia of formal consolidation. See Bell, 2007 U.S. App. LEXIS 10922, at *10. Here we have separate docket numbers and separate Judgment and Commitment orders. The only indicia to the contrary are the probation documents--which are not enough on their own. Accord id. at *12.

The "single common scheme or plan" rubric of subsection (B) raises a more difficult issue. The concept is vague and unlike subsection (C) there is no formal test, such as a single indictment or a formal order of consolidation. The circuit courts are

divided[5] as to whether the meaning of the phrase in subsection (B) is the same as the phrase "common scheme or plan" in section 1B1.3(a)(2), which attributes to the defendant being sentenced "relevant conduct" including certain acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction."

This matters only because the relevant conduct provision has commentary that elaborates on the phrase, saying that a common scheme or plan must have at least one common factor connecting the two crimes, such as "common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, cmt. 9(A). Godin says that in her case the modus operandi of the two burglaries was similar; she also says that they involved the same apartment building and that each was motivated by a desire for revenge.

The district court, siding with the majority of the circuits that have spoken, ruled that section 1B1.3 and its commentary does not control the meaning of section 4A1.2's "single common scheme or plan"; but the district court said that its conclusion--that the two burglaries were not part of a single

---

[5]Compare United States v. Berry, 212 F.3d 391, 393-95 (8th Cir.), cert. denied, 531 U.S. 907 (2000), United States v. Brown, 209 F.3d 1020, 1024 n.9 (7th Cir. 2000), and United States v. Beckett, 208 F.3d 140, 147 n.2 (3d Cir. 2000), with United States v. LaBarbara, 129 F.3d 81, 86 (2d Cir. 1997), and United States v. Mullens, 65 F.3d 1560, 1565 (11th Cir. 1995), cert. denied, 517 U.S. 1112 (1996).

common scheme or plan--would be the same even if some weight were given the alleged similarity of _modus operandi_. There are legitimate arguments for ignoring section 1B1.3, but either way the underlying problem remains to give some sensible meaning to section 4A1.2.

We said in _Elwell_ that--for reasons there explained in detail--the "ordinary meaning" of the phrase "single common scheme or plan" should be used. 984 F.2d at 1295. Under that standard, it seems to us that to fall within section 4A1.2(a)(2), burglaries of two different apartments committed by one actor several days apart need something more than resemblance of mode or motive even if that were relevant. No one would say that a judge who tried two similar drug cases back to back did so pursuant to a common scheme or plan.

A scheme or plan implies some kind of connective tissue like an initial plan encompassing multiple acts or a sequence of steps to a single end. _See_ _United States_ v. _Joy_, 192 F.3d 761, 771 (7th Cir. 1999), _cert. denied_, 530 U.S. 1250 (2000). Nothing like that was present in this case. Perversely, as in _Elwell_, a party to a conspiracy to rob banks may come out ahead under section 4A1.2(a)(2); but this is for the Sentencing Commission to fix, and we will not cure the discrepancy by extending the protection of subsection (B) to someone like Godin who is neither within its

language, and whose circumstances do not implicate any obvious policy pointing toward a lower sentence.

Godin says that even if within the guideline range, the sentence was unreasonably severe. Under United States v. Booker, 543 U.S. 220, 245-46, 259-60 (2005), the district judge can adopt a non-guideline sentence where this is consistent with the broad sentencing factors listed in the statute, 18 U.S.C. § 3553(a) (2000); and, where the factors are properly understood, our review of the overall judgment by the district judge is deferential. United States v. Jiminez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), cert. denied, 127 S. Ct. 928 (2007).

Godin's claim for a lower sentence is not frivolous. She is now 30 years of age and, under the sentence imposed, will serve 262 months in jail for a robbery that netted a few hundred dollars. Her sentences for the prior burglaries were 90 days and, although both are by statute crimes of violence because of their potential for violence, no physical harm to other individuals occurred. Indeed, it appears that no one else was present in either of the earlier episodes of burglary.

Two other considerations favoring leniency are stressed in Godin's brief. The first is that Godin had a miserable childhood and, in the district judge's words, a "horrendous life." Godin was chronically abused as a child and sexually assaulted both as a child and adult. Two of her brothers committed suicide, one

of which she witnessed at a young age. She is divorced, voluntarily surrendered parental rights to two of her children, and had her other two children removed from her care. One of her children was apparently sexually abused while not in Godin's custody.

The other fact is that Godin suffers from mental illness, including depression, suicidal tendencies and schizo-affective disorder (a catch-all that can embrace symptoms both of schizophrenia and of manic-depressive psychosis). She has been hospitalized for mental illness on several occasions. Her plight is complicated by a history of trauma and abuse, by an apparent inability to plan effectively for her future, and by considerable drug use, primarily but not exclusively marijuana.

Yet, where there is a "plausible explanation and a defensible overall result," we normally respect the judgment of the lower court as to whether to go outside the guidelines. Jiminez-Beltre, 440 F.3d at 519. Here, the district court acknowledged that Godin's life had been awful and that she had eventually cooperated with the authorities in disclosing the circumstances that led to multiple weapons being found in the apartment (but not quickly enough to provide substantial assistance under the guidelines).

Recognizing that Godin had suffered from mental impairments, the district judge nevertheless said that there was no

evidence that she was suffering from diminished capacity at the time of the burglary and thus no basis for a downward departure under the guidelines on this account, see U.S.S.G. § 5K2.13, and that Godin's mental and emotional condition--a discouraged basis for departure--was not so exceptional as to otherwise warrant a departure, see U.S.S.G. §§ 5H1.3, 5K2.0(a)(4). Such a refusal to depart is not ordinarily reviewable save for a mistake of law. United States v. Melendez-Torres, 420 F.3d 45, 50-51 (1st Cir. 2005).

As to the reasonableness of the sentence, the district judge noted that while Godin's life had been blighted, the crime of conviction was extremely serious--robbery in which a weapon had been brandished at a victim--and that Godin's past history showed a "proclivity for drug abuse, for crime, for violence." Further, the judge recognized that Congress had determined that double recidivism involving drugs or violence should be met by very stiff sentences, 28 U.S.C. § 994(h); U.S.S.G. § 4B1.1, background cmt., and he properly respected that decision. See generally United States v. Pho, 433 F.3d 53, 62 (1st Cir. 2006).

On review, Godin says that the "proclivity" finding is overstated both as to violence and drugs but this is very much a judgment call and the district court's statement is not clearly erroneous. Godin had shown some potential for violence--evidenced both by the possession and brandishing of the gun and by other

-12-

incidents in her past--and, while her use of marijuana is less dangerous than hard drugs, it was still regular drug use and apparently one of the motives for her robbery.  Nor did the judge, as now claimed, "ignore[]" Godin's mental and emotional history.

Perhaps the strongest argument for Godin is that about the worst she appears to have done in her prior burglaries was to trash an apartment; thus, as to these two offenses, she is within the letter of the career offender law but at the margin in terms of dangerousness.  Yet, her conduct was escalating--the robbery involved a gun--and the district court had no reason to think that Godin could easily be deterred from repetitions.  The statute is designed to give two chances and then to come down very hard the third time.

A lower sentence could have been defended.  But there was no mistake of law, the district judge made a thoughtful assessment, the result is not indefensible, and there the matter must stand.  If Godin could rehabilitate herself in prison and dispel the very real threat of future harm, a responsible penal system would eventually consider a shortening of her sentence.  The President, through the commutation process, may choose to do so.

<u>Affirmed</u>.